IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RUBEN MENDEZ,                          §
TDCJ #1282532,                         §
                                       §
              Petitioner,              §
                                       §
v.                                     §          CIVIL ACTION NO. H-08-1146
                                       §
NATHANIEL QUARTERMAN, Director,        §
Texas Department of Criminal Justice - §
Correctional Institutions Division,    §
                                       §
              Respondent.              §

## MEMORANDUM AND ORDER

State inmate Ruben Mendez (TDCJ #1282532) has filed a petition under 28 U.S.C.

§ 2254, seeking a federal writ of habeas corpus to challenge his state court felony conviction

for aggravated sexual assault. The respondent has filed an answer, arguing that Mendez is

not entitled to relief. (Doc. # 11). Mendez has filed a response, to which the respondent has

filed a reply and Mendez has filed a sur-reply. (Docs. # 13, # 14, # 15). After considering

all of the pleadings, the state court records, and the applicable law, the Court denies the

petitioner's request for relief and dismisses this case for reasons that follow.

## I.    BACKGROUND AND PROCEDURAL HISTORY

A state grand jury returned separate indictments against Mendez in 2004, charging

him with aggravated sexual assault of a child in Harris County cause numbers 981328 and

981329. The State enhanced both indictments for purposes of punishment with allegations

that Mendez had at least one prior felony conviction for sexual assault of a child. A jury in

the 262nd District Court of Harris County found Mendez guilty of aggravated sexual assault

of a child as charged in both indictments.  After Mendez admitted that the enhancement

allegations were true, the same jury sentenced him to serve life imprisonment in each case.

Thereafter, the trial judge granted the State's motion to accumulate the sentences so that they

would be served consecutively.

On direct appeal, Mendez argued that the victim's testimony was not credible and that

the evidence was legally insufficient to support his conviction.  The intermediate court of

appeals rejected Mendez's arguments and affirmed the convictions based on the following:

> To prove aggravated sexual assault of a child as to both charges, the
> State was required to prove that (1) on or about November 26, 2003, [Mendez]
> did then and there intentionally or knowingly cause the sexual organ of the
> victim to contact or penetrate the sexual organ and mouth[1] of [Mendez]; and
> (2) the victim was a child younger than seventeen years of age and was not the
> spouse of appellant; and (3) the victim was then and there younger than
> fourteen years of age. *See* TEX. PEN. CODE. ANN. §§ 22.011(c)(1),
> 22.021(a)(1)(B)(iii).

> In support of these allegations, [the] State called the victim to testify.
> The victim was nine years old at the time of trial.  She testified that, while her
> mother was at work, [Mendez] would remove her shorts and panties down to
> her knees.  [Mendez] would then remove his own pants, pull his underwear
> down to his knees and would then get on top of her.  She testified that
> [Mendez]'s "stick" would touch her "cookie," but it would not penetrate her.
> She further testified that [Mendez] touched her "middle part" with his index
> finger and mouth and that [Mendez]'s tongue would penetrate her sexual
> organ.  The victim also testified that [Mendez] "jacked off" in front of her and
> showed her the "white stuff" that would come out of his "stick." [Mendez]
> even explained to her that the white stuff was called "sperm."  The victim

---

[1]    The second charge involved [Mendez] causing [the victim's] sexual organ to contact
[Mendez's] mouth.

testified that [Mendez] warned her that if she told, he would report that her mom uses drugs.

*Mendez v. State*, Nos. 13-05-108-CR & 13-05-109-CR, 2006 WL 154864, **1-2 (Tex. App. — Corpus Christi April 13, 2006) (footnote in original). Thereafter, the Texas Court of Criminal Appeals refused Mendez's petition for discretionary review.

Mendez challenged his conviction further by filing identical state habeas corpus applications to challenge each conviction in cause numbers 981328 and 981329 under Article 11.07 of the Texas Code of Criminal Procedure. In these applications, Mendez argued that his conviction should be set aside for the following reasons: (1) his trial attorney was deficient for failing to file a motion to recuse the trial judge or to subpoena witnesses regarding the victim's lack of credibility; (2) the trial judge abused his discretion by not recusing himself *sua sponte*; and (3) his appellate attorney was deficient for failing to raise these issues on appeal. The state habeas corpus court, which also presided over the trial, entered findings of fact and concluded that Mendez was not entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief based on the findings and conclusions of law made by the trial-level habeas court. *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 (Tex. Crim. App. Jan. 9, 2008).

Mendez now seeks a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state court convictions in cause numbers 981328 and 981329. As he did on direct appeal, Mendez maintains that the evidence was legally insufficient to support the verdict. Mendez contends further that he is entitled to relief for the same reasons presented on state habeas

review because he was denied the right to a fair trial before an impartial court and he was denied the right to effective assistance of counsel at trial and on appeal. The respondent argues that Mendez is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

## II.    STANDARD OF REVIEW

Federal review of habeas corpus petitions filed after April 24, 1996, is subject to provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996). "[The] AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief." *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted). As the Supreme Court has explained, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), establish a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). Thus, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

4

For claims adjudicated on the merits in state court, the AEDPA provides that a petitioner is not entitled to relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an "unreasonable" application must be more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

A federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). In that situation, a reviewing court assumes that the state court applied the proper "clearly established Federal law" and then determines whether its decision was

5

"contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Where pure questions of fact are concerned, the AEDPA provides that the state court's findings and conclusions are entitled to deference unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, — U.S. —, 129 S. Ct. 1306 (2009). A state court's findings of fact are presumed to be correct on federal habeas review and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

As this deferential standard reflects, the AEDPA scheme recognizes that federal habeas corpus petitioners are required to first present their claims in state court and to exhaust all state court remedies through proper adjudication. *See* 28 U.S.C. § 2254(b). "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court." *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008). If the petitioner's claims have been adjudicated on the merits in state court, and not dismissed for procedural reasons, the AEDPA applies. *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural

grounds, there has not been an "adjudication on the merits" as contemplated by the AEDPA). If a claim has not been adjudicated on the merits in state court, federal review may be barred by the doctrine of procedural default if the petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Cone v. Bell*, — U.S. —, 129 S. Ct. 1769, 1780 (2009) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). The petitioner's claims for relief are examined below under the applicable legal standard.

## III. DISCUSSION

### A. Sufficiency of the Evidence

Mendez argues that he is entitled to relief because the evidence was legally insufficient to support the guilty verdict. In a separate, but closely related allegation, Mendez argues that the trial court erred by denying the defense motion for an instructed verdict at the close of the guilt/innocence phase of the trial because the evidence was legally insufficient to prove that he sexually assaulted the victim as alleged in the indictments. As outlined above, Mendez's arguments regarding the sufficiency of the evidence were rejected on direct appeal. *Mendez v. State*, Nos. 13-05-108-CR & 13-05-109-CR, 2006 WL 154864 (Tex. App. — Corpus Christi April 13, 2006, pet. ref'd).

7

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citation omitted).

In this instance, the state appellate court reviewed the statutory elements of the charged offense and found that the victim's testimony, which is summarized above, was more than sufficient to support the conviction for aggravated sexual assault of a child:

> [Mendez] contends there is insufficient evidence because the victim's testimony is not credible. He alleges it is possible that the victim fabricated the entire incident. As motive for lying, [Mendez] points us to a specific incident where the victim was punished by her mother after [Mendez] informed the victim's mother that the victim had kissed a boy. In further

8

support of his lack-of-evidence argument, [Mendez] points to the lack of physical evidence of sexual assault and the lack of "outside" witnesses.

First and foremost, the testimony of a sexual assault victim alone is sufficient to support a conviction, even if the victim is a child. *See* TEX. CODE. CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App. — Dallas 1994, no pet.). The unsophisticated language of a child is sufficient to support a conviction as long as the child victim has sufficiently communicated to the trier of fact that the offensive sexual touching occurred to a part of the body within the definition of section 21.01 of the penal code. *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977); *see Gallegos v. State*, 918 S.W.2d 50, 54 (Tex. App. — Corpus Christi 1996, pet. ref'd). The testimony of a child victim of sexual abuse is given wide latitude by the courts and the description of the sexual abuse need not be precise. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Given this latitude, no requirement exists that physical, medical, or other evidence be proffered to corroborate the victim's testimony. *See Garcia*, 563 S.W.2d at 928.

Viewing the evidence in the light most favorable to the verdict, and assuming the fact finder resolves conflicts in favor of the verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt all of the essential elements of the offense of aggravated sexual assault of a child. [Mendez]'s sole issue is overruled.

*Mendez v. State*, 2006 WL 1545864, *2. In his pending federal habeas corpus petition, Mendez contends that the state court's decision was unreasonable because the victim's testimony was not credible. He contends, therefore, that he is entitled to relief because the trial court erred by denying his motion for an instructed verdict.

To the extent that Mendez challenges the victim's testimony, an assessment of witness credibility is "beyond the scope of review" permitted by a legal sufficiency analysis. *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979)). As outlined

9

above, the evidence is legally sufficient on habeas review if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted). Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Thus, Mendez fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson v. Virginia* standard or that the state court's decision was otherwise incorrect. It follows that he is not entitled to federal habeas corpus relief on this claim.

### B. Trial Court's Legal Duty to Recuse

Mendez contends that he is entitled to relief because the trial judge had a "legal duty to *sua sponte* recuse himself" from presiding over his criminal proceeding "due to a direct conflict of interest in the outcome." Mendez contends that the presiding judge, State District Judge Mike Anderson, had such a conflict because he served on a judicial council for the Children's Assessment Center for two years, from October of 2000 through October of 2002. Mendez explains that the Children's Assessment Center provides a variety of professional services for the treatment of sexually abused children, including videotaped forensic interviews of a child's statement sexual assault examinations, and expert testimony in civil

10

and criminal court cases.[2]  At Mendez's trial in 2005, the State presented testimony from Tammy Urban, who interviewed the victim at the Children's Assessment Center, and a pediatrician employed by the University of Texas Medical School, Dr. Rebecca Girardet, who examined the victim at the Children's Assessment Center.  Because of his former connection to the Children's Assessment Center, Mendez maintains that Judge Anderson harbored an impermissible "bias" against him and should have recused himself automatically.[3]

In both civil and criminal cases, recusal or disqualification of a Texas trial judge is governed by Rule 18 of the Texas Rules of Civil Procedure.  *See De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004); *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (applying Texas Rule of Civil Procedure 18a to criminal cases).  Rule 18a outlines the following procedure for litigants to follow where recusal or disqualification is sought:

> At least ten days before the date set for trial or other hearing in any court other than the Supreme Court, the Court of Criminal Appeals or the court of appeals, any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case. The grounds

---

[2]   In support of his claim, Mendez presents a form letter dated October 5, 2000, thanking twelve Harris County judges, including Judge Anderson, for agreeing to serve a two-year term on the recently formulated judicial council for the Children's Assessment Center. (Doc. # 6, Exhibit A).  That letter explains that the purpose of the judicial council was "to open the dialogue regarding our mutual concerns about the sensitivity of child sex abuse cases." (*Id.*).

[3]   In support of this claim, Mendez presents a newspaper article from the Houston Chronicle, which cites an ethics opinion issued by the Texas Committee on Judicial Ethics.  (Doc. # 6, Exhibit B).  According to that article, the opinion found that membership by a judge on the Children's Assessment Center judicial council violated the Texas Code of Judicial Conduct because the Center engages in advocacy on behalf of sexually abused children by providing expert testimony in court. See also Comm. On Jud. Ethics, State Bar of Tex., Op. 270 (2001).

may include any disability of the judge to sit in the case. The motion shall be verified and must state with particularity the grounds why the judge before whom the case is pending should not sit. The motion shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated.

Tex. R. Civ. P. 18a. Under Rule 18b, Texas judges are required to disqualify themselves in all proceedings in which any of the following criteria apply:

(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or

(b) they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy; or

(c) either of the parties may be related to them by affinity or consanguinity within the third degree.

Tex. R. Civ. P. 18b(1). By contrast, a Texas judge is required to recuse himself in any proceeding in which the following circumstances arise:

(a) his impartiality might reasonably be questioned;

(b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(c) he or a lawyer with whom he previously practiced law has been a material witness concerning it;

(d) he participated as counsel, adviser or material witness in the matter in controversy, or expressed an opinion concerning the merits of it, while acting as an attorney in government service;

(e) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other

12

interest that could be substantially affected by the outcome of the proceeding;

(f) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iii) is to the judge's knowledge likely to be a material witness in the proceeding.

(g) he or his spouse, or a person within the first degree of relationship to either of them, or the spouse of such a person, is acting as a lawyer in the proceeding.

TEX. R. CIV. P. 18b(2). In this case, Mendez argues that Judge Anderson should have recused himself under Rule 18b because his service on the Children's Assessment Center judicial council created an unfair bias.

When bias is alleged as a ground for recusal, the recusal of a judge is appropriate only if the movant provides sufficient evidence to establish that a reasonable person, knowing all the circumstances involved, would harbor doubts as to the impartiality of the judge. *See Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Crim. App. 1992); *see also* TEX. R. CIV. P. 18b (setting out the grounds for recusal). Only when the bias attains a level denying the movant due process of law is recusal warranted. *Kemp*, 846 S.W.2d at 305. The alleged bias or prejudice must be personal and it must stem from an extrajudicial source outside the proceeding at hand. *See Liteky v. United States*, 510 U.S. 540, 544-45 (1994). To prevail,

13

the proponent must show a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

The state habeas corpus court rejected Mendez's claim that recusal was required in this instance. *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 75 (citing *De Leon v. Aguilar*, 127 S.W.3d 1, 5 fn.3 (Tex. Crim. App. 2004); *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993)). In that respect, the state habeas corpus court noted that, in Texas, a trial court's duty "to recuse or refer [the issue to an administrative judge]" is triggered by a timely filed recusal motion. *See id.* It is undisputed that Mendez did not file a motion to recuse prior to the trial. The state habeas corpus court found further that Mendez failed to show any bias on the trial judge's part or to show that the decisions made were influenced by any extrajudicial source.[4] *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 75. The state habeas corpus court also found that Mendez failed to show that the decisions made at trial "were the result of anything other than information and evidence the judge learned from participating in the trial." *Id.*

---

[4] The state court's fact findings and credibility determinations are entitled to the presumption of correctness found at 28 U.S.C. § 2254(e)(1). *See Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). The presumption is especially strong when the state habeas court and the trial court are one in the same," as they were in this case. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *see also Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts.") (citations omitted). Mendez does not meet his burden to rebut those findings with clear and convincing evidence. Therefore, the state court's fact findings are presumed correct.

14

Mendez maintains that this decision was unreasonable. As proof of Judge Anderson's bias, Mendez points to remarks that Judge Anderson made when ruling on the State's motion to accumulate the life sentences imposed by the jury so that the sentences would run consecutively:

> Stand Mr. Mendez. Based on what I have been able to see from your record, Sir, you are nothing, if you are not a pedophile and a predator of small children. You are frightening. You are the kind of person that needs to be locked up for the rest of your life. And it has never been easier for me to make a decision in my life. I will grant the State's motion to accumulate sentences.

*Court Reporter's Record*, vol. 5, at 10. Mendez contends that these remarks and other adverse trial rulings are evidence of impermissible bias. The remarks and rulings that Mendez references in his memorandum, however, are not proof of bias stemming from an extrajudicial source. As the Supreme Court has explained, "trial *rulings* have a judicial *expression* rather than a judicial *source*." *Liteky*, 510 U.S. at 545. Thus, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. "In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* at 555.

Mendez fails to show that the trial judge was required to recuse himself or that he was otherwise disqualified under the circumstances. Although Mendez claims that Judge Anderson had a conflict of interest as a result of his service on the Children's Assessment Center judicial council, Mendez admits that Judge Anderson served only a two year term that

ended in October of 2002. Mendez was not indicted until 2004, and his trial took place in 2005. Mendez does not allege or show that Judge Anderson had any direct involvement with the Children's Assessment Center during the relevant time period. Mendez has not otherwise presented any evidence of impermissible bias on Judge Anderson's part. Based on this record, Mendez fails to demonstrate that the trial court violated the law by failing to automatically disqualify or recuse himself under Rule 18b. *See Rosas v. State*, 76 S.W.3d 771, 774-75 (Tex. App. — Houston [1st Dist.] 2002, no pet.) (observing that mere violations of the Code of Judicial Conduct, standing alone, are not legal grounds for recusal, absent a showing that the appellant did not receive a fair trial, and holding that recusal was not warranted in a prosecution for sexual assault of a child solely because the trial judge was at one time a member of the Children's Assessment Center judicial council); *Shelby v. State*, No. 14-01-00581-CR, 2002 WL 31426618, *5 (Tex. App. — Houston [14th Dist.] Oct. 31, 2002, pet. ref'd) (same).

Even assuming that the trial court failed to comply with the Texas rules governing disqualification or recusal, an alleged violation of state law does not merit federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors resulted in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)). Mendez does not demonstrate a constitutional violation in

16

this instance.  Absent proof that his trial was tainted by unfair bias, Mendez fails to show that

he was harmed or that he was denied fundamental fairness as a result.  Because he has not

demonstrated that the trial court's failure to recuse itself rendered the trial fundamentally

unfair, Mendez does not show that the state court's decision to deny relief was contrary to,

or involved an unreasonable application of, clearly established Supreme Court precedent.

Accordingly, Mendez is not entitled to a federal writ of habeas corpus on this issue.

### C.    Ineffective Assistance of Counsel  at Trial

Mendez contends that he is entitled to relief because his criminal defense counsel,

Ricardo Gonzalez, performed in a constitutionally ineffective manner at his trial.  The state

habeas corpus court rejected these claims after considering the entire record, which included

an affidavit from Gonzalez.  *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 68-71,

74-76.  The Texas Court of Criminal Appeals adopted the state habeas corpus court's

findings and denied relief.

The Supreme Court has recognized that the Sixth Amendment guarantees criminal

defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S.

1, 5 (2003).  Claims for ineffective assistance of counsel are analyzed under the well

established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail

under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient

performance by counsel and actual prejudice as a result of the alleged deficiency.  *See*

*Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings,

17

it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88). To demonstrate deficient performance on his counsel's part, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That is, the defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient to prevail under *Strickland*. Once a petitioner establishes error by his defense counsel, then he must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id.*

18

In this instance, Mendez complains that his defense counsel was deficient for failing to file a motion to recuse the trial judge. Mendez contends further that his defense counsel failed to call a host of witnesses to testify on his behalf. These allegations are discussed separately below, under the *Strickland* standard.

### 1.    Failure to File a Motion to Recuse

Mendez maintains that his trial attorney was deficient because he did not file a motion to recuse Judge Anderson, who presided at the trial. Mendez contends that he asked his counsel to file such a motion on the grounds that Judge Anderson had a conflict of interest as the result of his two-year term of service on judicial council for the Children's Assessment Center, from October of 2000 through October of 2002. Because Judge Anderson's involvement with the Children's Assessment Center created an unfair bias, Mendez claims that his counsel should have filed a motion to recuse prior to the trial, which occurred in 2005.

In his affidavit to the state habeas corpus court, Gonzalez admitted that he did not file a motion to recuse Judge Anderson, and he offered the following explanation:

1.    I was never made aware from any source that Judge Mike Anderson was on a judicial council for the Children's Assessment Center.

2.    I never received any letter from Mr. Mendez relating to the Children's Assessment Center in the year 2000.

3.    Mr. Mendez never requested that I file a motion to recuse Judge Anderson from presiding over his trial.

19

4.      I did not think that it was necessary or beneficial to file a motion to recuse Judge Anderson.  Mr. Mendez's case was tried to a jury, and Judge Anderson presided over his trial.  In my experience, Judge Anderson has always been fair and impartial in all of the cases I tried before him, including cases involving aggravated sexual assault.

\* \* \* \*

8.      I truly believe that Judge Anderson provided Mr. Mendez a fair and impartial trial.  I tried over 150 jury trials, many of them before Judge Anderson, and have not witnessed any unfairness by Judge Anderson towards any of my clients.  I did not see any unfairness or bias against Mr. Mendez in this trial.

*See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 68-69.  Based on this record, the state habeas corpus court found that Mendez did not show that it was objectively unreasonable for his counsel to file a motion to recuse the trial judge.  *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 74.

Mendez insists that the state court's decision is incorrect and that his attorney should have filed a motion to recuse based on Judge Anderson's bias against sex offenders. As noted above, however, the state court expressly found that Mendez failed to show that any of the trial decisions were influenced by an extrajudicial source or anything other than information and evidence gleaned from the trial.  *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 74.  The state court's findings of fact are entitled to the presumption of correctness, which Mendez has not rebutted with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Because Mendez has not presented evidence of improper motive or opinion derived from an extrajudicial source, he fails to show that recusal was warranted or that a motion to recuse

20

would have been successful. *See Rosas*, 76 S.W.3d at 774-75; *see also Shelby*, 2002 WL 31426618, *5 (holding that counsel was not ineffective for failing to file a motion to recuse based on the trial court's membership on the Children's Assessment Center judicial council).

Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Because Mendez has not shown that his counsel failed to file a meritorious motion that would have changed the result of his trial, he fails to demonstrate that the state court's decision to reject his ineffective-assistance claim was incorrect or unreasonable.

### 2. Failure to Subpoena Additional Witnesses

Mendez, who concedes that his counsel presented testimony from several witnesses in his defense, complains that his attorney was deficient because he failed to call several members of the victim's family as additional witnesses. Mendez contends further that his defense counsel was deficient for failing to call additional witnesses from among his own friends and family. Mendez complains that these witnesses would have provided additional

21

testimony in support of his defense at trial, which attempted to show that the victim was not credible and that her false accusations were made solely in retaliation for his efforts to instill discipline. In particular, Mendez contends that these witnesses would have provided additional testimony to show that the victim fabricated the allegations of sexual assault because, after she was caught viewing a pornographic video, her mother "grounded" her as punishment.

In his affidavit to the state habeas corpus court, Gonzalez testified that he made attempts to contact and interview all of the potential witnesses identified by Mendez. *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 69. He also interviewed Mendez's family members. *See id.* at 69-70. As a matter of trial strategy, Gonzalez called witnesses who testified that the complainant had watched a pornographic movie and was punished by her mother as a result. *See id.* at 70. Gonzalez explained that he believed this evidence "would support the defense theory that the complainant saw pornography and made false allegations of sexual abuse against Mr. Mendez involving similar sexual conduct observed in the pornographic movie." *Id.* Gonzalez also called Mendez's daughter as a witness, because she reportedly heard the complainant apologize to Mendez for "lying that he had improperly touched her." *Id.* Gonzalez testified that he discussed the "defensive theory and strategies" with Mendez, "who agreed that these witnesses would give [him] the best chance for acquittal." *Id.*

Based on this record, the state habeas corpus court found that Mendez failed to show that it was objectively unreasonable for Gonzalez not to call additional witnesses. *See Ex*

22

*parte Mendez*, Nos. 69,357-01 & 69,357-02 at 74. Likewise, the state habeas corpus court found that Mendez failed to show a reasonable probability that, if one or all of the above-referenced witnesses had testified, the outcome at trial would have been different. *See id*. Thus, the state habeas corpus court found that Mendez failed to establish deficient performance or actual prejudice as a result of his counsel's decisions.

The record supports the state court's conclusion that Mendez's counsel was not deficient for failing to call additional witnesses. The record shows that Mendez's counsel called several witnesses in an effort to show that the victim was a vindictive liar who was motivated to retaliate against Mendez for disciplining her. Defense counsel presented testimony from a friend of the victim's mother, Bonifacio Florez, who had testified as the State's outcry witness. During questioning by defense counsel, Flores agreed that Mendez was known to discipline the children while he was living with the victim and her mother. Defense counsel also presented testimony from Mendez's sister, Elizabeth Mendez Vargas, Mendez's brother, Eliseo Mendez, and Mendez's 12-year-old daughter, Teresa Mendez. These witnesses testified that the victim made false accusations against Mendez because he had punished her for misbehaving. Defense counsel attempted to show that the victim was punished by her mother on one particular occasion, shortly before Mendez was arrested, after the victim was observed peeking through a doorway into a bedroom where Florez was viewing a pornographic video. Florez denied ever having watched a pornographic video. During the State's case on rebuttal, moreover, the victim's mother testified that she had never been informed of the alleged incident in which the victim had supposedly watched a

23

pornographic video and that she had never punished the victim as reported by the defense witnesses.

The record supports the state court's determination that defense counsel presented all of the witnesses that he and Mendez had identified prior to trial.  During a brief hearing outside of the jury's presence, Mendez acknowledged that he had the right to take the witness stand on his own behalf, but that it was his decision to not to testify.  *Court Reporter's Record*, vol. 4, at 76-79.  Mendez also acknowledged that his counsel had presented all of the witnesses that he had requested:

> COUNSEL:  Mr. Mendez, we discussed about you taking the stand to testify in your own behalf?
>
> MENDEZ:  Yes.
>
> COUNSEL:  To this point, are you satisfied that we've brought all the witnesses you wanted to put forth, and as far as you know, the testimony that we put on the stand, you are satisfied with that?
>
> MENDEZ:  Yes.
>
> COUNSEL:  All right.  Now, in your own words, do you want to take the stand and testify or not?
>
> MENDEZ:  No.

(*Id.* at 79).  Thus, the record refutes Mendez's claim that his counsel was deficient for failing to call additional witnesses at trial.

To the extent that Mendez takes issue with his counsel's chosen trial strategy, he does not show that he was denied a fair trial as a result of any decision about which witnesses to call.  Strategic decisions made by counsel during the course of trial are entitled to substantial

24

deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). It is well established that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

In his federal habeas corpus petition and supporting pleadings, Mendez argues that his counsel should have subpoenaed several members of the victim's family as "hostile" witnesses, including Eva Riojas, Marsha Riojas, Monica Riojas, Herman "J.R." Guillory, and Ashley Brown. According to Mendez, these witnesses would have testified that the victim was an untruthful troublemaker. Because Mendez does not present an affidavit or other sworn account from these witnesses, however, the respondent correctly notes that he has no evidence that any of them would have offered favorable testimony on his behalf if subpoenaed to testify for the defense at the trial. Absent such a showing, Mendez's claim concerning these witnesses is speculative and does not demonstrate either deficient

performance on his trial counsel's part or actual prejudice as a result. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

In addition, Mendez contends that his counsel was also deficient for failing to call several other members of his family, including his cousin Esperanza Olvera, his brother-in-law Isaac Vargas, and his niece Barbara Lee Mendez, as well as a friend, James Earl Bean III. Mendez contends that each one of these potential witnesses would have testified that the victim was not credible, that her allegations of sexual assault were false, and that her sole reason for making false allegations was to get rid of Mendez because he was disciplining her. Mendez complains further that several of these family members, including those who testified at trial, such as Eliseo Mendez and Teresa Mendez, would have testified that the victim had been caught viewing a pornographic movie and that she was merely repeating what she saw in the film because she wanted to get Mendez in trouble. Arguing that this evidence was material to his defense, Mendez insists that his counsel was deficient for failing to call these witnesses or to present this testimony at trial.

In his answer, the respondent noted that Mendez did not provide statements from any of the above-referenced friends or family members and that his claims were conclusory. After the respondent made this argument, Mendez filed a reply that included affidavits from his family members and his friend, John Earl Bean III, which were not presented on state habeas corpus review. (Doc. # 14, Exhibits C-G). Noting that Mendez did not present affidavits or proposed testimony from any of these potential witnesses on state habeas

26

review, the respondent maintains that this evidence is unexhausted and barred from federal review by the doctrine of procedural default. (Doc. # 15).

Mendez concedes that he did not present the affidavits in state court and that he did not exhaust available remedies by presenting this evidence properly on state habeas review. (Doc. # 16). The Fifth Circuit has recognized that a petitioner fails to exhaust his state remedies as required by 28 U.S.C. § 2254(b) when he presents material, additional evidentiary support to the federal court that was not presented to the state court. *See Smith v. Quarterman*, 515 F.3d 392, 406 (5th Cir. 2008) (citing *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986) (finding that "the policies of comity and federalism underlying the exhaustion doctrine" require that "new factual allegations in support of a previously asserted legal theory" be first presented to the state court)); *see also Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000); *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996); *Brown v. Estelle*, 701 F.2d 494, 495-96 (5th Cir.1983). The facts alleged in these affidavits were clearly available to Mendez at the time his state habeas corpus application was pending. Other than pointing to his *pro se* status, Mendez fails to provide any explanation for his failure to present the affidavits in a procedurally proper manner. Neither *pro se* status nor ignorance of the law constitutes cause for a procedural default. *See Saahir v. Collins*, 956 F.2d 115, 118-19 (5th Cir. 1992). Because Mendez fails to demonstrate cause for his failure to present the witness affidavits on state habeas review, and he does not show that he fits within another recognized exception to the doctrine of procedural default, the Court concludes that the affidavits are procedurally barred from federal habeas review.

27

Even if not procedurally barred, however, the affidavits do not establish that Mendez was denied effective assistance of counsel at his trial. In that respect, much of the proposed testimony found in the affidavits concerns the victim's motive to falsely accuse Mendez. Such proposed testimony is cumulative of the accounts given at trial by Elizabeth Mendez Vargas, Eliseo Mendez, and Teresa Mendez. As the Fifth Circuit has recognized, an attorney's failure to present cumulative testimony generally cannot form the basis of an ineffective-assistance claim. *See Richards v. Quarterman*, — F.3d —, 2009 WL 1111177, *9 (5th Cir. 2009) (citing *United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel.")). Mendez fails to show that counsel's failure to present cumulative testimony was unreasonable here.

Importantly, although Mendez contends that the witnesses would have provided other details about the victim's record of misbehavior and her untruthful character, he does not show that the proposed testimony would have been admissible if offered. Mendez acknowledges that testimony regarding the victim's credibility was constrained by a motion in limine that was granted prior to the trial pursuant to Rule 608(b) of the Texas Rules of Evidence.[5] *Clerk's Record*, at 54-56. Consistent with Rule 608(b) and the terms of the

---

[5]     Under the Texas Rules of Evidence, specific instances of conduct may be used to establish that a witness has specific bias, self-interest, or motive for testifying. *See* TEX. R. EVID. 613(b). Specific acts of misconduct may also be used to establish a person's motive for performing an act, such as making a false allegation. *See* TEX. R. EVID. 404(b). Where credibility is concerned, however, a witness's general character for truthfulness may be shown only through reputation or opinion testimony. *See* TEX. R. EVID. 608(a). Specific

(continued...)

28

motion in limine, defense counsel and defense witnesses were precluded from mentioning, directly or indirectly, any specific instance of conduct by a witness for the purpose of attacking the witness' credibility without first approaching the bench. *Id.* at 54. Mendez, who presents the proposed testimony as proof that the victim viewed a pornographic video on one occasions and is unworthy of belief, fails to show that the proposed testimony would have been admissible if offered for this purpose. Under these circumstances, Mendez does not show that his trial attorney was deficient for failing to present the proposed testimony or that he was actually prejudiced by any strategic decision made by defense counsel. Thus, even if the Court were to consider the affidavits, Mendez fails to demonstrate a valid claim for ineffective assistance of counsel in connection with his counsel's decisions.

In summary, Mendez has failed to demonstrate a valid claim for ineffective assistance of counsel under the *Strickland* standard. Mendez does not otherwise establish that the state court's decision to reject any of his ineffective-assistance claims was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Therefore, he is not entitled to federal habeas corpus relief on these claims.

### D. Ineffective Assistance of Counsel on Appeal

---

[5](...continued)

> instances of untruthfulness are prohibited by Rule 608(b) of the Texas Rules of Evidence, which provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."

Mendez also contends that he is entitled to relief because his appellate attorney, Hattie Sewell Shannon, failed to raise the issues outlined above, regarding his trial attorney's errors and the trial court's failure to recuse himself *sua sponte*. The state habeas corpus court rejected this claim, finding that Mendez failed to show that his appellate counsel's performance fell below an objective standard of reasonableness or that, but for appellate counsel's conduct, there was a reasonable probability that the result of the proceeding would have been different. *See Ex parte Mendez*, Nos. 69,357-01 & 69,357-02 at 75.

A claim of ineffective assistance on appeal is governed by the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal). To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Robbins*, 528 U.S. at 278. Appellate counsel is not deficient for not raising every

30

non-frivolous issue on appeal. *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)).  To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness."  *Id.* This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."  *Id.* "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."  *Id.*

As discussed previously, Mendez has failed to show that he was denied effective assistance of counsel at his trial or that the trial court erred by not recusing himself.  Mendez does not allege facts showing that his appellate counsel failed to raise a non-frivolous issue or that, but for his attorney's errors, the outcome of his proceeding would have been any different.  Thus, he fails to establish deficient performance or actual prejudice on his appellate counsel's part.  Under these circumstances, Mendez does not articulate a valid claim for ineffective assistance of counsel on appeal under the *Strickland* standard.  Mendez does not otherwise establish that the state court's decision to reject his ineffective-assistance claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  Therefore, he is not entitled to federal habeas corpus relief on these claims.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of

appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

2.    A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on June 4th, 2009.

Nancy F. Atlas
United States District Judge